In re MEIKLEHAM.

(District Court, N. D. Georgia. September 21, 1916.)

No. 590.

1. BANKRUPTCY ⊕408(4)—DISCHARGE—SCHEDULE OF ASSETS.

The bankrupt who received a large monthly salary filed a petition about the middle of the month, but did not include in his schedules salary earned up to that time. His attorney had advised him that it was unnecessary to include such salary in the schedules, and that he would take it for fees. The bankrupt understood that it was to be a fee in the bankruptcy action, but the attorney intended to apply the sum on previous claims. On examination the bankrupt frankly disclosed his salary, and his testimony showed that he was under the impression that the schedules showed the amount of salary earned. Thereafter the bankrupt paid the amount of such salary to his trustee, less the amount specified in the schedules as an attorney's fee in the bankruptcy case. *Held*, that the bankrupt could not be denied the discharge on the ground of fraudulent concealment, though he was guilty of carelessness.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 732, 733; Dec. Dig. ⊕408(4).]

2. BANKRUPTCY ⊕405—DISCHARGE—RIGHT TO OPPOSE.

One whose debt would not be barred by discharge has no right to oppose the same.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 709–711; Dec. Dig. ⊕405.]

3. BANKRUPTCY ⊕415(3)—DISCHARGE—OBJECTIONS.

Objection to discharge on the ground that a bankrupt made a false oath with reference to his homestead exemption cannot be passed upon until the question of the right to the exemption is decided.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 698–701, 704, 707; Dec. Dig. ⊕415(3).]

In Bankruptcy. In the matter of the bankruptcy of H. P. Meikleham. On exceptions to the report of the master overruling objections to the bankrupt's discharge. Report confirmed, and discharge granted.

Denny & Wright, Dean & Dean, and Lipscomb & Willingham, all of Rome, Ga., for objectors.

Barry Wright, of Rome, Ga., for bankrupt.

NEWMAN, District Judge. There has been delay in disposing of this case because I wished to go carefully over the evidence again, although I suppose the most of it had been read to me at the time of the argument of the case. My absence from home has also prevented my taking the matter up for final disposition.

Several matters brought up as grounds for objections to this bankrupt's discharge were disposed of practically during the argument; that is, the court did not think the matters were sufficient to stand in the way of the discharge. The only real matter for consideration now is whether or not the failure of the bankrupt to schedule about $390 of salary due him at the time the petition in bankruptcy was filed was omitted in such a way and under such circumstances as to bar his discharge.

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The objections to the discharge of the bankrupt originally filed were as follows:

"First. That such application should not be granted because of the following facts, which the undersigned charges to be true, viz.: Because said bankrupt committed an offense, punishable by imprisonment, as provided under the bankrupt laws of the United States of 1898 and amendments thereto, for that said bankrupt made oath to his schedules of assets and liabilities, from which schedules of assets and liabilities said bankrupt knowingly and willfully omitted to schedule among his assets the sum of between $300 and $400 of salary due him at the time of filing his said petition, which salary had already been earned by said bankrupt at the time his said petition was filed. Objector charges that since said bankrupt filed his petition for bankruptcy in said cause, he has collected and appropriated to his own use said salary, and has omitted and failed to pay over the same to his trustee. Objector shows that said bankrupt has been receiving for a number of years, and was receiving at the time that he filed his petition in bankruptcy, and is still receiving a salary of $10,000 per year, in his capacity as agent for the Massachusetts Mills, or for Mr. Edward Lovering, the treasurer of the Massachusetts Mills; that said salary is payable on the first of each month, in 12 equal monthly installments. That his petition was filed on the ——— day of ———, 1914, and he had therefore earned on account of salary for said month the sum of $———, which should have been scheduled among his assets, and which sum should have been, by him, paid over to the trustee in this said cause. That said bankrupt knowingly and willfully failed to schedule the same among his assets, and knowingly and willfully has withheld the payment of same to said trustee.

"Second. That such application should not be granted, because of the following facts, constituting an additional ground, which the undersigned charges to be true, viz.: For that said bankrupt knowingly and fraudulently concealed his assets in that he failed to set forth in his schedule of assets between $300 and $400 of salary earned by him at the time of the filing of his petition in bankruptcy in said cause, which salary said bankrupt had already earned as agent for the Massachusetts Mills, or as the representative of Edward Lovering, the treasurer of said Massachusetts Mills.

"Third. That such application should not be granted because of the following fact: That at the time objector's debt was contracted, the proceeds of the money borrowed from her by said bankrupt was used for the purchase of 100 shares of the capital stock in a corporation known as Pell City Manufacturing Company, of the par value of $100 each; that said stock was turned over to objector as collateral security for said loan; that afterwards, during the spring of 1904, said bankrupt procured objector to lend him said stock for the specific purpose of hypothecating same to borrow the sum of $3,000, and said bankrupt represented that he desired to borrow said money in order to make another investment; that objector loaned said bankrupt said stock for that specific purpose; that afterwards, said bankrupt paid off said loan of $3,000 and got possession of said Pell City Manufacturing Company stock; that after said bankrupt repossessed himself of said stock, he failed and omitted to return the same to objector, but instead thereof he sold said stock to the State Mutual Life Insurance Company, of Rome, Ga., for the sum of $10,000, and applied the proceeds thereof in discharge of certain other indebtedness owing by him, and which grew out of certain cotton speculating deals entered into by said bankrupt; that the disposition of said stock and the proceeds therefrom, as made by said bankrupt, was without the knowledge and consent of objector; that objector loaned said stock to said bankrupt for the specific purpose of borrowing said $3,000, as above stated, and for no other purpose, and that after said $3,000 loan was paid off said bankrupt had no right or authority to dispose of said stock, or to appropriate the proceeds from same to any purpose whatever, but that he held said stock in trust for objector; that said appropriation of said stock so made by said bankrupt was a fraud upon objector and a misappropriation of assets and property belonging to her, while said bankrupt occupied a fiduciary relation, and acted in a fiduciary capacity as regards said stock."

"Wherefore objection is made to the granting of such application for a discharge, and a hearing and a judgment of the court is asked thereon."

An amendment to these objections was filed, but disallowed by the referee, and I think properly disallowed. The second and last amendment to these objections to discharge was filed by the objector on April 4, 1916, and is as follows:

"And now comes Mrs. Virginia A. Grafton, objector to the discharge of said bankrupt, and by leave of court amends the objections heretofore filed by her, and shows to the court the following additional facts:

"First. That at the time said bankrupt's petition was filed, he claimed therein a homestead exemption of certain property, alleging under oath that he is entitled to said homestead exemption by reason of the fact that 'he has the care of a dependent aged female relative.' Objector shows to the court that said statement was false, and that bankrupt knew at the time same was made that it was false, and that said bankrupt, in making said statement and swearing thereto, made a false oath in connection with his proceedings in bankruptcy.

"Second. Objector shows to the court that the facts stated above have all come to her knowledge since the filing of the original objections by her in said cause, and since the above-stated cause was re-referred to the special master by the court.

"Wherefore, objector prays that these her objections be inquired into, and that the bankrupt be refused a discharge."

These objections to discharge were referred to W. S. Rowell, Esq., as special master, for hearing and report as to the right of the bankrupt to a discharge. His report is as follows:

"Mrs. Virginia A. Grafton, a creditor of the bankrupt, filed objections to the discharge of the bankrupt under section 14b (1) and (4), Bankruptcy Act [July 1, 1898, c. 541, 30 Stat. 550 (Comp. St. 1913, § 9598)], which read as follows: 'Has (1) committed an offense punishable by imprisonment as herein provided; or * * * (4) at any time subsequent to the first day of the four months immediately preceding the filing of the petition transferred, removed, destroyed, or concealed, or permitted to be removed, destroyed, or concealed any of his property, with intent to hinder, delay, or defraud his creditors.'

"Grounds 1 and 2 of the objections referred to the failure of the bankrupt to put into his schedule of assets a certain amount of money claimed to be due him on the 14th day of November, 1914 (the date on which his petition in bankruptcy was filed), from the Massachusetts Mills in Georgia, of which he was agent in charge.

"The third ground of the objection referred to a loan of money made by Mrs. Virginia A. Grafton to the bankrupt, and which said money is alleged to have been wrongfully diverted from the original purpose of the loan. Counsel for the bankrupt moved to strike this third ground for the reason that it was not a proper subject for objections to discharge. At the time the objection was made the special master declined to strike this ground, but now finds against the third ground, and finds that the bankrupt's discharge should not be refused for the reasons alleged in said ground.

"The first and second grounds of the objection to the discharge refer, as stated, solely to the failure to put into the schedule the salary claimed to be due to the bankrupt at the date his petition was filed. The evidence shows that the bankrupt received a salary of $10,000 per year from the Massachusetts Mills, payable monthly at the end of each month, the monthly installments amounting to $833.33. The amount earned by the bankrupt up to and including the 14th day of November, 1914, for the 14 days from November 1st, amounted to about $378.88. This amount was not scheduled in the bankrupt's petition. The evidence shows that it was knowingly withheld from said petition; that his attorney informed him that it was not necessary to put it into the schedules; that he would take it as a fee to cover amounts already due him as attorney's fees, and to M. B. Eubank, an attorney of Rome, Ga.; that

his attorney informed him that the most that could happen would be that he might be required to pay it back if this constituted a preference. Acting under this legal advice of his attorney, the bankrupt seems to have taken no further notice of this matter. He testifies, however, that he supposed when he signed the schedule that this item was in it, and, if not, he was relieved from the duty of placing it there under the advice given him by his attorney.

"The sole question in this case is whether or not the failure to place this asset in his schedule, if it was an asset, was fraudulently done; that is, if it was a fraudulent concealment of assets from the trustee. After carefully reviewing the evidence in this case, and having closely investigated the law applicable thereto, the special master finds that the bankrupt accepted in good faith the advice given by his attorney; that said advice was given in good faith, and that, acting thereunder, he did not insist on putting this salary into his schedule of assets. I use the words 'did not insist,' as the bankrupt testified that after being advised by his attorney he left the matter entirely with him. I conclude from this that he gave the matter no further thought. He testified in one place that he 'supposed it was in the schedule.'

"I am unable to conclude under the evidence that the bankrupt had any intention of committing a criminal act punishable by imprisonment. I think all the surrounding circumstances point to the fact that he had no such intention. I recognize the fact that in some cases the bankrupt would not be relieved from negligence merely because he acted under the advice of counsel, but the decisions distinctly say that if this advice was given and accepted in good faith, the bankrupt has a right to be guided by it.

"It further appears, and the bankrupt's intentions in regard to this matter are shown by the fact that at the general examination held not very long after the petition was filed, he disclosed this salary to the attorney for objecting creditors willingly, admitting that it was due him; that he had received it, but claimed that he was advised by his counsel that it was not necessary to put it in. It further appears that $290 of this money was afterwards paid to the trustee, the bankrupt's attorney claiming the balance as a retainer for representing him in the bankruptcy proceeding.

"Taking into consideration all the facts and circumstances surrounding this transaction, and applying the law thereto as it appears to the special master, he has no hesitation in finding that there was no fraudulent intent on the part of the bankrupt in not putting this salary into his schedules, and he, therefore, finds against the first and second grounds of the objections to the discharge."

To this report of the special master exceptions were filed by Mrs. Grafton, the objector to the discharge. The exceptions are:

First. To the action of the special master in passing upon the third ground of the objections to discharge as follows:

"The third ground of objections referred to a loan of money made by Mrs. Virginia A. Grafton to the bankrupt, and which said money is alleged to have been wrongfully diverted from the original purpose of the loan. Counsel for the bankrupt moved to strike this third ground for the reason that it was not a proper subject for objection to the discharge. At the time the objections were made the special master declined to strike this ground, but now finds against said third ground, and finds that the bankrupt's discharge should not be refused for the reason alleged in said ground."

The exceptions then set out the evidence with reference to Mrs. Grafton's claim against the bankrupt, which is at some length and probably unnecessary to quote.

Second. To the finding of the special master as follows:

"After carefully reviewing the evidence in this case, and having closely investigated the law applicable thereto, the special master finds that the bankrupt accepted in good faith the advice given him by his attorney; that he did not insist on putting this salary into his schedule of assets. I use

the words 'did not insist,' as the bankrupt testified that, after being advised by his attorney, he left the matter entirely to him. I conclude from this fact that he gave the matter no further thought. He tesified in one place that he 'supposed it was in the schedule.' "

Then is set out the testimony which, it is claimed, shows that this finding is incorrect.

Third. To the finding of the special master as follows:

"I am unable to conclude under the evidence that the bankrupt had any intention of committing a criminal act punishable by imprisonment. I think all the surrounding circumstances point to the fact that he had no such intention. I recognize the fact that in some cases the bankrupt would not be relieved from negligence merely because he acted under the advice of counsel, but the decisions distinctly say that if this advice was given and accepted in good faith, the bankrupt has a right to be guided by it."

Fourth. The fourth exception is to the following finding of the special master:

"It further appears, and the bankrupt's intentions in regard to this matter are shown by the fact that at the general examination held not very long after the petition was filed, he disclosed this salary to the attorneys for objecting creditors willingly, admitting that it was due him; that he had received it, but claimed that he was advised by his counsel that it was not necessary to put it in. It further appears that $290 of this money was afterwards paid to the trustee; the bankrupt's attorney claiming the balance as a retainer for representing him in the bankruptcy proceeding."

This, it is claimed, is contrary to the evidence.

The other exceptions, as I understand them, are to the same effect, although referring to different language of the master, except the twelfth, which excepts to the refusal to allow an amendment setting up some matters relative to the sale of a certain automobile, on which the court has heretofore passed.

[1] The question argued before me and the main question in this case, so far as the right of the bankrupt to have a general discharge is concerned, is the failure of the bankrupt to schedule, when his petition in bankruptcy was filed, the money due him by the Massachusetts Mills for salary from the 1st to the 14th of November, 1914, on which latter date his petition in bankruptcy was filed. It appears by all of the evidence that while the papers in the bankruptcy proceeding were being prepared by the bankrupt's attorney, the bankrupt being present, mention was made, in conversation between them, of the fact that there was due him at that time, from the mills of which he was manager, his salary from the 1st of the month up to that date, which amounted to something near $400. The bankrupt spoke of it at the time as being between $350 and $400. It seems that the attorney then said to him that it was unnecessary to allow that to go into the "general smash-up," as he expressed it; that he had better let him have it for fees. The attorney, it appears from the evidence, was referring to fees due him and another attorney for services rendered prior to that time in other matters, but the bankrupt himself seems to have thought he referred to fees in the bankruptcy case. The attorney did not refer to fees in the bankruptcy case, apparently, because he put in the schedules filed by Meikleham

$100 for attorney's fees for himself for the bankruptcy case. It appears from the evidence that the bankrupt was of the opinion all the time, up to the time that he was examined about it, that the amount due him had been stated as an asset in the schedules in the bankruptcy proceeding. He told counsel on his first examination that they would find it there, but his attorney appears to have corrected him and stated that it was not there, and it does not appear in the schedules. The bankrupt subsequently gave to his attorney, who paid the same to the trustee in bankruptcy, $290 which, acting upon the idea that he was to pay the attorney $100, made the amount which was due him by the mills at the time of the filing of the petition.

There was no concealment of the fact that the amount was due the bankrupt at the time his bankruptcy papers were prepared, and I think the evidence shows clearly that he intended it to go in as an asset. It is true that he did not pay it, but he testified that he thought he owed it to his attorney under the statement made to him by the attorney at the time the papers were being prepared.

I do not think it could be fairly said that there was such concealment of this amount as would justify the denial of the discharge. The authorities on the subject are all to the effect that it must be clearly shown, in order to prevent a discharge, that the withholding of assets from the trustee and from the bankruptcy court was intentional, willful, and fraudulent, and I do not think any one could find that to be the case here. It is true that there was great carelessness, but I do not think there was such fraudulent concealment as to deprive the bankrupt of his right to a discharge.

The bankrupt's attorney has stated in open court that it was his fault, and that he gave the advice, assuming that the attorneys, as he said, would be willing for him and his associate in former cases to have this amount of fees.

[2] The bankrupt raised the question at one time by pleading that Mrs. Grafton, his mother-in-law, the objector here, did not have the right to object to his discharge because the bankrupt would not be released of his debt to her by the discharge. I understand this to have been subsequently withdrawn, but the same matter is raised by the objector as a ground why the bankrupt should not be discharged. Of course if her debt is of such character that the bankrupt would not be released from it by the discharge, she would not have a right to object to the discharge. The position of her counsel is, however, that while they hope her debt would not be discharged even if the discharge were allowed, they still think it right on her behalf to object to the same.

It is a very doubtful question in my mind, and one upon which I do not care to express any opinion at this time, especially as it is wholly unnecessary to do so, whether Mrs. Grafton's debt is one against which the discharge would operate or not. It seems clear from the evidence that the bankrupt sold certain stock of hers which he had in his hands, and used the proceeds to pay his own personal obligations. Although there had been some transactions between them before, as I understand the evidence, at the time he had the stock

he was simply holding it for Mrs. Grafton. It seems she proceeded to take judgment against him for the $10,000 and interest, a general, common-law judgment, and this, it is suggested, may stand in the way of her right to recover against him notwithstanding the discharge. As to whether this is true or not also I do not care to express any opinion. I simply say that I think, under the evidence, it may at least be said to be doubtful whether the objector here has any interest as to whether he is discharged or not. She is the sole objector to the discharge; none of the other creditors appearing in the matter. In this connection, a case recently decided by the Supreme Court of the United States (Friend v. Talcott, 228 U. S. 27, 33 Sup. Ct. 505, 57 L. Ed. 718) will be found exceedingly interesting on the matters involved.

Whatever may be true about this, however, I think that the only ground of objection that need be considered is the failure to schedule the amount due the bankrupt at the time he went into bankruptcy, and what he did about that did not constitute such a fraudulent concealment of assets as would bar a discharge.

[3] The objection that the bankrupt made a false oath with reference to his homestead exemption certainly cannot be passed upon until the question is settled of the bankrupt's right to the exemption, and even if it should be determined that he is not entitled to the exemption, that would not show that he swore willfully false in his application for the same. This ground was not argued, as I remember it, and I suppose is not seriously insisted upon.

All of the exceptions to the master's report must be overruled, the report confirmed, and the discharge granted.